UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-21615-GAYLES

GUILLERMO QUINTERO,

    Plaintiff,

v.

PUBLIX SUPER MARKETS, INC.,

    Defendant.                    /

## ORDER

**THIS CAUSE** comes before the Court on Defendant Publix Super Markets, Inc.'s Motion for Summary Judgment (the "Motion") [ECF No. 23]. The Court has reviewed the Motion and the parties' briefs and is otherwise fully advised. For the reasons that follow, the Motion is **DENIED**.

## FACTUAL BACKGROUND

This is a retaliation and termination suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), Florida's Private Sector Whistleblower Act, Fla. Stat. § 448.102 ("FWA"), and the Florida Civil Rights Act, Fla. Stat. § 760.01 ("FCRA"). Plaintiff Guillermo Quintero ("Quintero") claims that he was both fired and not promoted because he refused to help Defendant Publix Super Markets, Inc. ("Publix") cover up its discriminatory treatment of another employee.

### I.    Quintero's Hiring

Quintero applied for a job with Publix in 2013. Publix hired him as a part-time bakery clerk and Quintero subsequently rose to Assistant Meat Manager in February of 2017, a position that he held until his termination. [ECF No. 24, ¶¶ 1, 9–10].

As part of the hiring process, Quintero filled out an application form that asked: "Have you ever committed a crime, been convicted of a crime, plead 'guilty' or 'no contest' to a crime, spent time in jail or prison, or had adjudication withheld by a court on a crime (besides a minor traffic citation)?" [ECF No. 25-10, at 2]. The question specified that the applicant was to include all misdemeanor and felony citations. [*Id.*]. Quintero answered: "Yes[.] Will explain at interview[.]" [*Id.*]. Quintero did have a criminal history. In 1995, he pled guilty to first degree attempted murder for which he served five years in prison. [ECF No. 26-5, at 3]. In 2002, he was charged with misdemeanor battery. [*Id.*]. Publix did not ask Quintero about his criminal history during the interview, nor at any other time until shortly before his termination. [ECF Nos. 24, ¶ 1; 31-3, ¶ 1].

While employed, Quintero's reviews were typically positive. [ECF No. 31-1, ¶ 60]. He frequently received praise. [*Id.*]. He also earned a promotion to management, which required him to pass a test, attain a positive recommendation from his supervisors, and go through an additional interview process. [ECF No. 24, ¶¶ 7–9].

## II.    Juan Pastran

In 2014, Quintero was drawn into a dispute over the circumstances surrounding a co-worker's termination. The co-worker, Juan Pastran, filed a charge with the Equal Employment Opportunity Commission ("EEOC") and subsequently filed suit against Publix alleging discriminatory treatment due to his sexual orientation. [ECF Nos. 24, ¶¶ 3–4; 31-1, ¶ 25].

Alicia Roberts ("Roberts"), a Publix human resources investigator, met with Quintero to discuss Pastran's allegations and Quintero's recollection of him. [ECF Nos. 24, ¶¶ 3–4; 31-1, ¶ 25]. She advised Quintero that their meeting was to remain confidential. [ECF No. 24, ¶ 4]. Quintero claims that Roberts asked him to provide a statement for the EEOC investigation that disclaimed Pastran's allegations and said that Quintero was not aware of any harassment that Pastran

experienced due to Pastran's sexual orientation. [ECF Nos. 24, ¶ 4; 31-1, ¶¶ 25–29]. Quintero also claims that Publix asked him if he would provide the same testimony to a court if there was a lawsuit. [ECF No. 31-1, ¶ 27]. Quintero refused to provide a statement because he believed that Pastran's treatment amounted to unlawful discrimination. [ECF Nos. 31-1, ¶ 29; 31-2, ¶¶ 5, 8]. He also asserts that he believed that providing false testimony would be breaking the law. [*Id.*]. Publix disputes this account. [ECF No. 24, ¶¶ 3–6].

Quintero also spoke with another human resources investigator, Vanessa Michael ("Michael"), about Pastran shortly thereafter. [ECF No. 31-2, ¶ 6]. Quintero alleges that Michael also asked him to provide a false statement and that he again refused because he believed Pastran's allegations were true. [*Id.* ¶ 8].

### III. Quintero's Termination

In early 2017, Publix received a customer complaint about Quintero. [ECF No. 24, ¶ 11]. The complaint, filed by the boyfriend of Quintero's ex-wife, alleged that Quintero had an extensive criminal history and a violent temperament. [*Id.* ¶ 12]. Specifically, the complaint alleged that Quintero punched the complainant in the face in 2015, while Quintero was employed at Publix, and that the force of the punch sent them both to the hospital for medical treatment (the "2015 incident"). [ECF No. 24, ¶¶ 12–13]. It also alleged that Quintero was arrested. [*Id.*]. Publix Retail Associate Relations Specialist Maria Delly ("Delly") investigated the complaint. [ECF No. 24, ¶ 11].

To assist Delly's investigation, Quintero submitted a police report about the 2015 incident. The report indicated that Quintero had been charged with aggravated battery and listed Publix as his employer. [ECF Nos. 24, ¶ 13; 31-1, ¶ 13]. Delly spoke to employees at Publix and learned that the 2015 incident had previously been reported to Publix managers, who had considered it a

matter for law enforcement. [ECF No. 31-1, ¶¶ 46–48]. Delly also investigated Quintero's criminal background and scheduled an in-person interview with him about the incident and his prior criminal history. [ECF Nos. 24, ¶ 18; 31-3, ¶ 15].

The February 14, 2017, meeting included Quintero, Delly, and Quintero's store manager. The parties dispute what occurred. Publix asserts that the conversation was solely about Quintero's criminal history, the 2015 incident, and Publix's investigation of the 2015 incident. [ECF No. 24, ¶¶ 15–17]. Publix states that Quintero admitted to his criminal background and the 2015 incident. [*Id.*]. Quintero asserts that while the discussion of his criminal background and the 2015 incident comprised most of the meeting, it later focused on Pastran's lawsuit. [ECF No. 31-1, ¶¶ 15–17, 30–33]. Quintero alleges that Delly asked him to sign a prepared statement about Pastran's treatment during his employment at Publix. [*Id.* ¶¶ 30–33]. Quintero asserts that he refused to sign the statement because he believed the statement was false. [*Id.*].

Upon the conclusion of her investigation, Delly recommended to the district manager that Quintero be terminated for his failure to comply with Publix's Rules of Acceptable Conduct because his aggravated assault on his ex-wife's boyfriend violated Publix's Rule of Unacceptable Conduct No. 7, which prohibits disorderly or immoral conduct that may reflect on the reputation of Publix on or off-the-job. [ECF No. 24, ¶ 19]. Quintero was fired on March 10, 2017. [ECF No. 31-1, ¶ 65]. Publix claims he was terminated because his violent behavior post-hiring violated Publix's Rules of Unacceptable Conduct. [ECF No. 24, ¶¶ 19, 23]. The Publix regional district manager claims that he made the ultimate decision to terminate Quintero's employment based on Delly's recommendation. [*Id.* ¶¶ 22–23]. According to Publix, the district manager was unaware of Pastran's lawsuit and the role Publix allegedly wanted Quintero to play in opposing it. [*Id.* ¶ 22].

4

The district manager could recall no other occasion where Publix conducted a criminal background check after an employee had been hired. [ECF No. 31-1, ¶ 53].

IV.     **Quintero's EEOC Charge**

After he was fired, Quintero filed a charge of discrimination with the EEOC (the "Charge"). [ECF No. 25-3]. He checked the Charge's box for retaliation as the cause of his action and marked his discrimination as a "continuing action." [*Id.*]. The Charge also notes his hire date, his disclosure of his criminal background, and Pastran's suit. [*Id.*]. Quintero alleges in the Charge that Publix fired him for refusing to lie on their behalf in Pastran's lawsuit:

> In order to defeat [Pastran's] claim and undermine his charge of discrimination, H.R. approached me and attempted to have me give a false statement about the employee (which was to be submitted to the EEOC); I was told that I would also have to eventually testify under oath and I would have to repeat the same false statement. I refused to participate in this fraudulent conduct or agree to provide false sworn testimony. After protesting and again refusing the company's demands, the company got even with me by retaliating and in March/April 2017 ultimately terminated me on pretextual reasons (over alleged conduct occurring outside of work).

[*Id.*]. The EEOC issued a right to sue letter that has led to Quintero's lawsuit here. Publix timely filed its Motion, which is now ripe for review.

**LEGAL STANDARD**

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a

reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).

"Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## DISCUSSION

Publix advances three arguments in its Motion: (1) Quintero failed to exhaust his administrative remedies with respect to his failure to promote claim, (2) Quintero cannot establish a prima facie case for retaliation because he engaged in no protected activity and has not identified a casual connection between his protected activity and termination, and (3) Quintero cannot establish that Publix's reasons for firing him were pretextual.[1]

---

[1] The Eleventh Circuit has determined that because the FCRA is modeled after Title VII, federal case law regarding Title VII is applicable to construe claims under the FCRA. *Albra v. Advan, Inc.,* 490 F.3d 826, 834 (11th Cir. 2007); *see also Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 925 (Fla. 4th DCA 2007). FWA claims based on retaliation are also analyzed using these same standards. *See Ibezim v. GEO Grp., Inc.*, No. 17-80572-CIV, 2018 WL 8222121, at *12 n. 6 (S.D. Fla. July 6, 2018), *aff'd,* 770 F. App'x 1012 (11th Cir. 2019) (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000)).

**I.      Failure to Exhaust**

The Court first addresses whether Quintero administratively exhausted his claim for retaliatory failure to promote with the EEOC before filing suit here. A claim for retaliation based on a failure to promote is not specifically alleged in Quintero's First Amended Complaint (the "Complaint"). The Complaint instead alleges generally that Quintero suffered "adverse employment actions, including being treated with increased hostility and unfairness, and ultimately, termination." [ECF No. 9, ¶¶ 27, 33]. Importantly, Quintero also alleges in his Complaint that he was briefly promoted shortly before he was fired. [*Id.* ¶ 22]. Quintero's failure to promote claim first arose in his initial interrogatory responses, where he stated that he believed Publix had discriminated against him by firing him "and maybe by not promoting [him]." [ECF No. 25-4, at 10; *see also* ECF No. 25-1, at 62 (noting the failure to promote allegation in deposition testimony)]. Quintero never moved to amend his Complaint to include a retaliatory failure to promote claim or reconcile any potential inconsistencies between that claim and his promotion.

Publix argues that Quintero did not administratively exhaust his failure to promote claim with the EEOC because the Charge complained solely of retaliatory discharge without any mention of retaliatory failure to promote. *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2379 (2015) (noting that administrative exhaustion is required before filing a civil action under Title VII). Quintero argues that the EEOC was properly on notice of and could have investigated his failure to promote claim because it is "like or related to" the retaliatory discharge claim and, thus, exhaustion is satisfied. [ECF No. 31, at 6 (citing *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000))].

Notably, failure to promote and termination "constitute[] [] separate actionable unlawful employment practice[s]." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)

("Discrete acts such as termination[] [or] failure to promote . . . are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."). As such, Quintero had to specifically allege each claim in both his Charge, so as to give the EEOC notice to investigate, and Complaint, so as to give Publix notice to defend. *See Anderson v. Embarq/Sprint*, 379 F. App'x 924, 927 (11th Cir. 2010) (noting that a plaintiff's complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge"). That Quintero never actually pled a claim for failure to promote in his Complaint is therefore dispositive of this issue. *See Williams v. Edelman*, No. 05-60653-CIV, 2006 WL 8431630, at *4 (S.D. Fla. May 31, 2006) (rejecting plaintiff's newly-asserted causes of action, facts, and legal theories because they were raised for the first time at summary judgment and not alleged in complaint, depriving defendants of fair notice) (citing *Al-Amin v. Donald,* 165 F. App'x 733, 740 (11th Cir. 2006)). Moreover, because Quintero's failure to promote claim is contradicted by his allegation of a promotion in the Complaint, Publix cannot have been on notice that Quintero intended to pursue that claim here. Accordingly, Quintero cannot bring a claim for retaliatory failure to promote under Title VII or the FCRA.[2]

## II. Prima Facie Case for Retaliation

Publix also asserts that Quintero cannot establish a prima facie case for retaliation at trial. To state a claim for retaliation, a plaintiff must plausibly allege that: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) her employer's retaliatory motive was the "but for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359 (2013); *Goldsmith v. Bagby Elevator Co.*, 513

---

[2] The FWA does not require administrative exhaustion. *See* Fla. Stat. § 448.102(3).

F.3d 1261, 1277 (11th Cir. 2008). Publix argues that Quintero's refusal to provide a statement was not protected activity and that he has not established a causal connection between his refusal and his termination. The Court finds, however, that genuine issues of material fact preclude summary judgment.

First, a genuine issue of material fact exists as to whether Publix asked or directed Quintero to make a false statement, and if so, whether Quintero voiced his opposition to doing so. Quintero's refusal would constitute protected opposition to an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a); *see also Hamilton v. Sheridan Healthcorp Inc.*, 602 F. App'x 485, 489 (11th Cir. 2015) ("A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination.") (citing EEOC Compliance Manual § 8–II(B)(2) (1998), *available at* http://www.eeoc.gov/laws/guidance/compliance.cfm). Whether Quintero was asked to give a false statement and/or voiced his opposition comes down to a question of what occurred in his conversations with Roberts, Michael, and Delly. The veracity of the witness testimony is a determination best made by a jury at trial, not at summary judgment.

Second, a genuine issue of material fact exists as to whether Publix retaliated against Quintero for refusing to provide a false statement. "The casual connection prong requires a plaintiff to demonstrate that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."[3] *Anderson v. Embarq/Sprint*, 379 F.

---

[3] Publix argues that the cat's paw theory is inapplicable here because it does not apply where but-for causation is required. This theory allows plaintiffs to "hold [] employer[s] liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011). It "provides that causation may be established if the plaintiff shows that the decisionmaker followed [a] biased recommendation without independently investigating the complaint against the employee," making the decisionmaker a mere "cat's paw" in the biased recommender's plan to discriminate against the employee. *Stimpson v. City of*

App'x 924, 930 (11th Cir. 2010) (quoting *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008)) (internal quotation marks omitted). On the record presented, a jury could find that Publix's termination of Quintero constituted retaliation for Quintero's refusal to provide a statement in each of the meetings with Publix, including one with Delly who ultimately recommended his termination.

Third, a genuine issue of material fact exists as to whether the reasons given for Quintero's termination—namely his criminal history and the 2015 incident—were pretext. "To show pretext, the plaintiff must present evidence sufficient 'to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse [action].'" *Blackmon v. Wal-Mart Stores E., L.P.*, 358 F. App'x 101, 104–05 (11th Cir. 2009) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). The record reflects that Publix was aware of the 2015 incident before Delly's investigation, that no one in Publix's history had retroactively had a criminal history examination, that Quintero's performance evaluations were typically positive, and that he had recently received a promotion. On the other hand, Publix has produced evidence that its cause for Quintero's termination was legitimate and non-retaliatory: Quintero's violation of Publix's Code of Conduct. These facts are directly in dispute and preclude summary judgment.

---

*Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). But here, Quintero's success on the merits would necessarily demonstrate that he "would not have suffered the adverse employment action if []he had not engaged in the protected conduct." *Duncan v. Alabama*, 734 F. App'x 637, 639–40 (11th Cir. 2018) (citing *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 362).

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Publix Supermarket, Inc.'s Motion for Summary Judgment [ECF No. 23] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of November, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE