UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-21615-GAYLES

GUILLERMO QUINTERO,

    Plaintiff,

v.

PUBLIX SUPER MARKETS, INC.,

    Defendant.                             /

## ORDER

**THIS CAUSE** comes before the Court on Defendant Publix Super Markets, Inc.'s Motion for Reconsideration of Order Denying Summary Judgment (the "Motion") [ECF No. 61]. The Court has reviewed the Motion and the parties' briefs and is otherwise fully advised. For the reasons that follow, the Motion is **DENIED**.

### BACKGROUND

Plaintiff Guillermo Quintero ("Quintero") alleges that he was fired in retaliation for refusing to give a false statement for an Equal Employment Opportunity Commission ("EEOC") investigation involving another employee.[1] Quintero alleges that he was asked on several occasions to give such a statement—including once while under investigation himself—and refused each time because he believed that giving a false statement was perjury. Publix claims it terminated Quintero because of a violent incident that occurred while Quintero was employed at Publix that violated Publix's code of conduct. This incident occurred several years before his

---

[1] The Court adopts and incorporates the recitation of facts in its Order denying Publix's Motion for Summary Judgment [ECF No. 57].

termination, however, and Quintero alleges that Publix knew about the incident well before he was terminated but did nothing.

The Court denied Publix's Motion for Summary Judgment in an Order on November 25, 2019 (the "Order") [ECF No. 57]. Publix then moved for reconsideration.

## **LEGAL STANDARD**

"[R]econsideration of a previous order is an extraordinary remedy, to be employed sparingly." *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1358 (S.D. Fla. 2004). "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1342 (S.D. Fla. 2007) (quoting *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993)) (internal quotation marks omitted). Arguments that were or should have been raised in the first instance are not appropriate grounds for a motion for reconsideration. *See Gougler v. Sirius Prods., Inc.*, 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005). Furthermore, "[i]t is an improper use of 'the motion to reconsider to ask the Court to rethink what the Court already thought through rightly or wrongly.'" *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). The reconsideration decision is granted only in extraordinary circumstances and is "committed to the sound discretion of the district judge." *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1301 (M.D. Fla. 2006) (quoting *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)) (internal quotations omitted).

**DISCUSSION**

I. **The Cat's Paw Theory**

Publix's main argument for reconsideration is that the cat's paw theory does not apply to cases requiring but-for causation. Publix argues that the Eleventh Circuit has specifically considered and rejected the theory's application in Title VII retaliation cases as Title VII retaliation claims require a plaintiff to demonstrate but-for causation. The Court disagrees that Eleventh Circuit precedent always rejects the theory for cases requiring but-for causation.

The cat's paw theory provides that discriminatory animus may be imputed to a neutral decision-maker if a supervisor recommends an adverse employment action due to a discriminatory animus and that recommendation is a motivating factor of the decision-maker's ultimate adverse employment action.[2] *See Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011) (affirming application of cat's paw theory to discrimination statute in employment litigation where statute required that discrimination be a motivating factor in the adverse employment decision). In *Staub*, the plaintiff's supervisor made false accusations against the plaintiff to a decision-maker intending to induce the plaintiff's termination. *Id.* at 414. The plaintiff alleged that the supervisor's accusations were motivated by the supervisor's discriminatory animus against members of the armed services in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). *Id.* at 414–15. The decision-maker, unaware of the supervisor's discriminatory animus, relied on the supervisor's false accusations and recommendations to terminate the plaintiff. *Id.* The Supreme Court used agency principles to find that the plaintiff

---

[2] Federal courts have historically applied the cat's paw theory of liability in discrimination cases. The theory is based on Aesop's fable of a monkey who induced a cat to stick its paw into a fire to grab some chestnuts, only to then steal the chestnuts and run leaving the cat with nothing but a burnt paw. *Staub v. Proctor Hospital*, 562 U.S. 411, 416 n. 1 (2011) (citing *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) (Posner, J.)).

established that membership in the armed forces was a motivating factor in the supervisor's recommendation. *Id.* at 418–19, 422. And the Supreme Court specifically noted that the USERRA required that discrimination be a *motivating factor* in the adverse employment decision. *Id.* at 416–17. The Supreme Court therefore effectively established the use of a proximate causation standard and affirmed use of agency principles in cases requiring a motivating factor analysis. *See Sims v. MVM*, 704 F.3d 1327, 1336 (11th Cir. 2013).

After *Staub*, the Eleventh Circuit addressed the cat's paw theory in an Age Discrimination in Employment Act ("ADEA") action. *See Sims*, 704 F.3d 1327. There, the Eleventh Circuit held that the Supreme Court's cat's paw analysis in *Staub* did not apply to the ADEA because, unlike the USERRA, the ADEA requires "but-for" causation as opposed to the more lenient "motivating factor" causation. *Id.* at 1336 ("Because the ADEA requires a 'but-for' link between the discriminatory animus and the adverse employment action as opposed to showing that the animus was a 'motivating factor' in the adverse employment decision, we hold that *Staub's* 'proximate causation' standard does not apply to cat's paw cases involving age discrimination."). While suggesting that it is "appropriate" to apply agency principles to determine vicarious liability of an employer, the court held that the plaintiff could only prevail in his ADEA case if his recommending supervisor's discriminatory animus was a but-for cause of, "or determinative influence on," the decision-maker's ultimate adverse employment decision. *Id.* at 1336–37. The court ultimately found that the plaintiff could not prevail under an agency theory because the decision-maker was independently aware of the plaintiff's poor work performance, as evidenced by the decision-maker's testimony that he made his decision based on his own observations while also relying on other supervisors' opinions. *Id.* at 1337. So, while the court analyzed the case under an agency theory, it held that the plaintiff could not meet its burden there. *Id.*

4

On its face, then, *Sims* appears to hold that *Staub*'s more lenient proximate cause standard does not apply to but-for cases. It does *not* remove consideration of agency principles from the but-for analysis. Indeed, the *Sims* court expressly stated that it is "follow[ing] the same holding by the Tenth Circuit in *Simmons* [*v. Sykes Enters.*, 647 F.3d 943 (10th Cir. 2011)]" in which the Tenth Circuit noted that the cat's paw theory was more properly considered a theory of subordinate bias and held that:

> Unlike Title VII and the USERRA, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor, the operative phrase relied upon in *Staub*. A plaintiff alleging age discrimination must instead prove age was a "but for" cause of her termination. Despite this distinction, the underlying principles of agency upon which subordinate bias theories are based apply equally to all types of employment discrimination discussed here . . . [including] under [] Title VII.

*Simmons*, 647 F.3d at 949 (quoting *Gross v. Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) (internal quotation marks and citations omitted). Accordingly, the Eleventh Circuit has not foreclosed the use of agency principles in Title VII retaliation cases. These principles apply when a recommending supervisor's discriminatory animus was a but-for cause of, "or determinative influence on," the decision-maker's ultimate decision. Indeed, if agency principles did not apply in these circumstances, companies would be able to insulate themselves from Title VII liability simply by reviewing adverse employment action recommendations with blinders and rubber stamping them without ensuring their accuracy.

Some courts have interpreted *Sims*' holding to mean that a cat's paw theory is not available in ADEA cases because of the requirement of "but-for" causation. *See, e.g.*, *Reynolds v. Winn-Dixie Raleigh Inc.*, 620 F. App'x 785, 792 (11th Cir. 2015) ("[T]his Court has indicated that while the theory may be appropriate in cases in which the plaintiff is required to prove only that the protected characteristic was a motivating factor, such as in Title VII disparate treatment claims,

5

the theory is inappropriate when the statute requires 'but-for' causation.") (citing *Sims*, 704 F.3d at 1335–36). In *Reynolds*, the Eleventh Circuit first noted that the cat's paw theory may be inappropriate, but then continued to analyze the case using agency principles. *See id.* (finding that plaintiff offered no evidence that "the decision-maker either followed another supervisor's biased recommendation without independently investigating the complaint or conducted an independent investigation but relied on facts provided by the biased supervisor" as the causation prong of the False Claims Act, 31 U.S.C. § 3730(h)(1), requires for retaliation). This interpretation later extended to Title VII cases. *See Duncan v. Alabama*, 734 F. App'x 637, 640 (11th Cir. 2018) (applying cat's paw theory in but-for case despite indicating that theory might be inappropriate and finding that plaintiff failed to meet burden of proof).

But not all cases resolved this way. In *Godwin v. Wellstar*, the Eleventh Circuit applied the cat's paw theory to an ADEA case and found that genuine issues of material fact existed as to whether the defendant discriminated against the plaintiff. 615 F. App'x 518 (11th Cir. 2015). The court noted that the cat's paw theory required the plaintiff to "show that the biased individual's action had a 'determinative influence' on the ultimate decision or was a 'determinative cause'" such that the adverse employment action would not have occurred without the biased individual's action. *Id.* at 529 (citing *Sims*, 704 F.3d at 1335–36, and *Simmons*, 647 F.3d at 950). The court further noted that "the but-for cause that a biased individual recommended that the plaintiff's employment be terminated does not constitute a 'determinative cause' where 'undisputed evidence in the record supports the employer's assertion that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination.'" *Id.* (citing *Simmons*, 647 F.3d at 950). The court ultimately denied summary judgment because "a reasonable jury could find that [the decision-maker] did not conduct an independent investigation and that [the supervisor's]

recommendation was the 'but-for' cause of, or the determinative influence on, [the decision-maker's] decision." *Id.*; *see also Soulinthong v. TrustPoint Int'l*, 695 F. App'x 474, 478 (11th Cir. 2017) (indicating that plaintiff could use the cat's paw theory to establish a prima facie case of retaliation if the facts supported such a theory).

Here, Quintero alleges—and Publix does not dispute—that the decision-maker is the District Manager of Publix, Vince Harris ("Harris"). The recommending "supervisor" is a Human Resources employee ("Delly") who was assigned to investigate the complaint about Quintero's out-of-work conduct.[3] Publix describes the investigation process as follows: the decision-maker "receives information from the [HR employee] regarding the facts and/or findings of an investigation, and based on that information, makes the decision on whether to proceed with discharge." [ECF No. 24, at 5 n. 8]. Nowhere does Publix state that Harris conducted an independent investigation, and indeed Quintero alleges both that such an investigation did not happen here and that Delly's recommendations are always followed.

Based on the record at summary judgment, a reasonable jury could find that Delly had a discriminatory animus against Quintero; that because of that animus, she recommended that Quintero be terminated; and that Harris terminated Quintero based on that recommendation, without conducting an independent investigation.[4] Accordingly, reconsideration is not warranted on this issue.

---

[3] Though much of the case law refers to a "supervisor" who recommended an adverse employment action, here, the "supervisor" is a Human Resources employee. The difference is immaterial because Delly had an alleged retaliatory animus and recommended the adverse employment action—the same role that recommending supervisors played in the prior cases.

[4] The jury never reached these issues. At trial, the jury returned a verdict for Publix, finding that Quintero did not engage in protected activity under Title VII and the Florida Civil Rights Act. [ECF No. 101].

## II. The Florida Whistleblower Act

Publix also argues that Quintero has failed to state a claim under the Florida Whistleblower Act because he never refused to participate in an action that actually violated the law. *See Bell v. Georgia-Pac. Corp.*, 390 F. Supp. 2d 1182, 1187–88 (M.D. Fla.), *aff'd sub nom. Bell v. Georgia-Pac. Corp*, 153 F. App'x 701 (11th Cir. 2005) ("In order to satisfy the first element of his prima facie case under the Whistleblowers' Act, the Plaintiff must produce evidence that he objected to or refused to participate in an activity, policy, or practice of [the Defendant] which is in violation of a law, rule, or regulation."). In other words, Defendant argues that Quintero never refused to perjure, nor actually perjured, himself. The Court finds that this issue does not present a basis for reconsideration, however, because Plaintiff claims that he refused to give a false statement as requested by Delly and other Publix employees for another employee's EEOC investigation. Quintero believed that giving the statement would amount to perjury, which is a crime. *See* 18 U.S.C. § 1621; *see also United States v. Norris*, 300 U.S. 564, 574 (1937) ("Deliberate material falsification under oath constitutes the crime of perjury and the crime is complete when a witness' statement has once been made."). Accordingly, a genuine issue of material fact exists as to whether he was asked to participate in an action that would violate the law.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Publix Supermarket, Inc.'s Motion for Reconsideration of Order Denying Summary Judgment [ECF No. 61] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of February, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE